81 F.3d 172
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Juan Carlos GAMARRA-CARRERA, Ana Maria Gamarra, Juan Carlos
Gamarra, Rosana Gamarra, Petitioners,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 95-9511.
(BIA Nos. Akf-dvx-aqd)
 United States Court of Appeals, Tenth Circuit.
 March 26, 1996.
 
 Before TACHA, BALDOCK, and BRISCOE, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioners Juan Carlos Gamarra-Carrera, his wife Ana Maria Gamarra, and their two children are Peruvian citizens who appeal from a decision of the Board of Immigration Appeals (Board) upholding an immigration judge's order denying their applications for asylum and withholding of deportation pursuant to sections 208(a) and 243(h) of the Immigration and Nationality Act (Act), respectively, 8 U.S.C. 1158(a) and 1253(h).
 
 
 3
 Mr. Gamarra-Carrera was a member of a Peruvian police unit known as PIP. During the time Mr. Gamarra-Carrera served with PIP, an anti-government guerilla movement, known as the Shining Path, was active in Peru. While a member of PIP, Mr. Gamarra-Carrera received anti-terrorist training and worked in the narcotics trafficking and licensing divisions of that organization. The latter section of PIP worked to insure that businesses paid their applicable taxes.
 
 
 4
 While Mr. Gamarra-Carrera was working as a licensing agent in the town of Ayachuco, a known Shining Path stronghold, a restaurant reserved exclusively for the police was bombed. Mr. Gamarra-Carrera was one block away at the time of the bombing, and the perpetrators of the bombing were never identified. Mr. Gamarra-Carrera testified that, after the bombing, unknown persons came to his hotel and told the desk clerk that Mr. Gamarra-Carrera should be careful and stay off the streets.
 
 
 5
 After the bombing incident, Mr. Gamarra-Carrera's wife began receiving threatening calls at her job in Lima. Unidentified people also came to Mr. Gamarra-Carrera's residence asking for him. Mr. Gamarra-Carrera eventually left PIP and began working as a personal bodyguard to a presidential candidate and, later, to an executive of the Mobil Corporation.
 
 
 6
 Petitioners entered the United States as nonimmigrant visitors and remained longer than authorized. On August 27, 1993, petitioners were ordered to show why they should not be deported. Having conceded deportability, petitioners filed applications for asylum and for withholding of deportation. The immigration judge found petitioners ineligible for asylum and withholding of deportation, but granted their voluntary departure. Petitioners appealed to the Board. The Board dismissed the appeal, finding that petitioners had failed to establish refugee status because the record did not show that they had a well-founded fear of persecution based on one of the five statutory grounds. The Board also found that petitioners failed to meet the even higher burden necessary for withholding of deportation.
 
 
 7
 In order to obtain a grant of asylum, an applicant must survive a two-step process. Hadjimehdigholi v. INS, 49 F.3d 642, 646 (10th Cir.1995). The first step is to establish that the applicant is a refugee as defined by the statute; the second step is to win the discretionary grant of asylum from the Attorney General. Id. We are concerned here with the first step. "To establish refugee status, the alien must prove either past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. (internal quotations omitted). The asylum applicant bears the burden of proof, Refahiyat v. INS, 29 F.3d 553, 556 (10th Cir.1994), and "must present specific facts through objective evidence to prove either past persecution or good reason to fear future persecution," Kapcia v. INS, 944 F.2d 702, 707 (10th Cir.1991) (internal quotations omitted). To show a well-founded fear of persecution, the applicant must first establish that "the fear is objectively reasonable by proving 'facts that would support a reasonable fear that the petitioner faces persecution.' " Hadjimehdigholi, 49 F.3d at 646 (quoting Kapcia, 944 F.2d at 706); see also Sadeghi v. INS, 40 F.3d 1139, 1142 (10th Cir.1994)(requiring proof through credible, direct, and specific evidence of facts that would support a reasonable fear of persecution). "Persecution has been defined as the offensive infliction of suffering or harm and encompasses more than just restrictions or threats to life and liberty." Hadjimehdigholi, 49 F.3d at 646 (internal quotation omitted).
 
 
 8
 "Our jurisdiction to review the [B]oard's order arises under 8 U.S.C. 1105a(a) and 28 U.S.C. [ ] 158 pertaining to review of orders of federal agencies. Our review is limited to the administrative record forming the basis for the deportation order. 8 U.S.C. 1105a(a)(4)." Kapcia, 944 F.2d at 704 (internal quotation omitted).
 
 
 9
 We review the Board's factual determination that an alien is ineligible for asylum to determine whether reasonable, substantial and probative evidence supports the Board's findings, and will reverse only if the alien presented evidence that compels the conclusion he or she has a well-founded fear of persecution based on a statutory ground. Sadeghi, 40 F.3d at 1142 (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 & n. 1 (1992)). We may not weigh the evidence or redetermine the credibility of witnesses. Refahiyat, 29 F.3d at 556. Even when we disagree with the Board's conclusions, we cannot reverse the Board if the Board's decision is supported by substantial evidence and is substantially reasonable. Id.
 
 
 10
 On appeal, Mr. Gamarra-Carrera argues that the Board erred in concluding that he failed to prove he had been singled out for persecution on account of his political opinions or his membership in a distinct social group. He objects to the Board's conclusion that acts against him were motivated by his employment status as a policeman and not because of his individual political beliefs. Mr. Gamarra-Carrera further objects to administrative notice taken of recent "reductions in strength" of the Shining Path. Appellant's Opening Br. at 4.
 
 
 11
 The immigration judge held that the experiences related by Mr. Gamarra-Carrera did not constitute past persecution. We agree. Mr. Gamarra-Carrera offered no evidence connecting the bombing and the threats to the Shining Path. There was no evidence that the Shining Path ever confronted Mr. Gamarra-Carrera or that the restaurant bombing was targeted against him individually.
 
 
 12
 We have reviewed the administrative record, and we hold that it contains substantial evidence to support the Board's finding that petitioners failed to establish their entitlement to refugee status because they did not show past or anticipated persecution on account of one of the five statutory bases. Specifically, nowhere does the record show, either directly or circumstantially, that Mr. Gamarra-Carrera's experiences were the result of any political opinion held by him. Indeed, Mr. Gamarra-Carrera testified that the Shining Path was against "anybody ... that opposed them." R. at 106. "[T]he mere existence of a generalized 'political' motive underlying the guerillas' [activities] is inadequate to establish (and, indeed, goes far to refute) the proposition that [Mr. Gamarra-Carrera] fears persecution on account of political opinion as [the Act] requires." Elias-Zacarias, 502 U.S. at 482.
 
 
 13
 As noted above, in order for us to reverse the Board's finding that Mr. Gamarra-Carrera failed to establish a well-founded fear of persecution, the record must compel the conclusion that Mr. Gamarra-Carrera has expressed a political opinion, and it must compel the further conclusion that the "persecutor" would persecute the applicant specifically because of that political opinion. Elias-Zacarias, 502 U.S. at 481 & n. 1. Mr. Gamarra-Carrera has failed to present any evidence to support either of these conclusions.
 
 
 14
 In an effort to remedy that defect, Mr. Gamarra-Carrera asks us to conclude that a political opinion could be imputed to him by the Shining Path based solely on his membership in PIP. We decline to express an opinion on the validity of imputed political opinion as the basis for refugee status because, in this case, the record contains no evidence that the Shining Path had anything to do with the incidents related by Mr. Gamarra-Carrera. It is equally plausible that Mr. Gamarra-Carrera's activities as a member of PIP's narco-trafficking unit generated the threats against him. Further, we note the opinion of the Board of Immigration Appeals in In re Fuentes, 19 I. & N. Dec. 658, 661 (1988), holding that "dangers faced by policemen as a result of that status alone are not ones faced on account of race, religion, nationality, membership in a particular social group, or political opinion." We find no evidence in the record to conclude that Mr. Gamarra-Carrera was harassed for any reason other than his status as a policeman. These kinds of risks arise from the nature of Mr. Gamarra-Carrera's employment as a policeman and are not "on account of" the immutable beliefs or traits within the scope of 243(h) of the Act. See id. We thus will not conclude that Mr. Gamarra-Carrera has a well-founded fear of future persecution because of his former membership in a distinct social group.
 
 
 15
 To secure withholding of deportation, petitioners must establish a clear probability of persecution, a heavier burden than they bore to obtain asylum. Castaneda v. INS, 23 F.3d 1576, 1578 (10th Cir.1994). Because we hold that the record contains substantial evidence to support the Board's denial of petitioners' requests for asylum, " 'it is clear that [they] did not meet the tougher standard required for withholding of deportation.' " Id. (quoting Nguyen v. INS, 991 F.2d 621, 626 (10th Cir.1993)).
 
 
 16
 Finally, we reject petitioners' assignment of error in the administrative notice taken by the immigration judge. Petitioners failed to raise the administrative notice issue in their appeal to the Board. We, therefore, will not address the issue. See Nguyen, 991 F.2d at 623 n. 3.
 
 
 17
 The decision of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3